CARLOS E. COLÓN, demandante y apelado, *v.* GLADYS MELÉNDEZ, demandada y apelante.

Número: AP–62–42   Resuelto: 20 de febrero de 1963

444

*Enrique González*, abogado de la apelante; Carlos E. Colón *pro se; José N. Dapena Laguna y Waldemar del Valle*, abogados del apelado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Las partes en este caso tienen cuatro hijas habidas de una unión natural; posteriormente, la madre contrajo matrimonio con otra persona. Alegando el nuevo estado marital de la madre, el padre reclamó la custodia de las hijas, y la ilustrada Sala sentenciadora, le ordenó a la señora Carmen A. Renovales de Colón, una especialista en relaciones de familia, preparar un estudio sobre las condiciones de ambos hogares, a los fines de determinar, cuál de los dos hogares sería el más adecuado para garantizar el bienestar de las niñas. Rendido el informe, la ilustrada Sala sentenciadora requirió de las partes notificarle a la Sala si sometían el caso por dicho informe o si interesaban ofrecer otra prueba. La madre contestó aceptando someter el caso por el informe rendido y el padre no contestó ni presentó escrito alguno solicitando una oportunidad para presentar prueba contra dicho escrito. Después de transcurrir el término concedido para tal solicitud, la ilustrada Sala sentenciadora consideró el caso sometido y procedió a resolver el mismo.

Es aconsejable, antes de pasar sobre los méritos de la cuestión litigiosa, detenernos a considerar ciertas cuestiones de derecho, que en forma directa o marginal, se suscitan en este caso.

■ Habiéndose resuelto por este Tribunal que el recurso de Hábeas Corpus es un procedimiento extraordinario, de naturaleza civil—*Vázquez* v. *Rivera*, 69 D.P.R. 947 (Marrero) (1949), cita precisa a las págs. 948–949—y que las apelaciones ante este Tribunal de cualquier providencia definitiva dictada por un Tribunal de Primera Instancia se

rigen por la Sec. 1ra. de la Ley de 12 de marzo de 1903, incorporada hoy a nuestro Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 1773)—*Espinosa* v. *Ramírez*, 71 D.P.R. 10 (De Jesús) (1950), cita precisa a la pág. 14—y vista la Regla 61 de las Reglas de Procedimiento Civil de 1958, según enmendada en 24 de enero de 1961—Reglas de Práctica para Puerto Rico (Civiles) Supl. 1962, pág. 33—la cual establece que las nuevas reglas sólo se considerarán como supletorias a las disposiciones especiales de los estatutos sobre recursos extraordinarios, es evidente que el medio legal por el cual este Tribunal, puede revisar una providencia final dictada por una Sala del Tribunal Superior de Puerto Rico, en un procedimiento de Hábeas Corpus, es mediante el recurso de apelación, tal y como éste se entendía antes de adoptarse las nuevas reglas de procedimiento. La confusión sobre el uso del recurso apelativo apropiado proviene de la naturaleza flexible del procedimiento de Hábeas Corpus, que puede utilizarse lo mismo dentro de un procedimiento criminal en curso—reducción de fianza en apelación, encarcelamiento sin radicación de la acusación correspondiente o sin la celebración de la vista en tiempo hábil, etc.—como en un procedimiento civil especial de custodia. Claro, siempre quedará disponible nuestra facultad para intervenir mediante *certiorari* en los casos apropiados.

■ Si bien es verdad que de acuerdo con la Sec. 2 de la Ley de 12 de marzo de 1903, incorporada asimismo a nuestro Código de Enjuiciamiento Criminal, (34 L.P.R.A. sec. 1774), la apelación interpuesta no produce el efecto de suspender las relaciones de familia decretadas por una Sala de Primera Instancia, este Tribunal, haciendo uso de las facultades implícitas que tiene para lograr el más ordenado y eficaz funcionamiento de su jurisdicción, o en auxilio de dicha jurisdicción, puede ordenar en una apelación de evidentes méritos, la suspensión de las relaciones de familia decretadas por el Tribunal de Primera Instancia, estableciendo otras relaciones mientras se dispone de la apelación, si tiene

ante sí toda la prueba admitida por el Tribunal de Primera Instancia: 2 Am. Jur. 850, sec. 9 último párrafo.

■ Asumiendo, aunque sin resolverlo, que el informe preparado por una especialista para utilizarse en la resolución de un caso regulando las relaciones de familia, tenga la misma categoría de documento separado o confidencial sobre nacimiento, adopciones o estudios sociales sobre la familia de un menor—Ley Núm. 24 de 22 de abril de 1931, enmendada por adición por la Ley Núm. 84 de 15 de junio de 1953 (24 L.P.R.A. sec. 1135 y 1136); Ley Núm. 85 de 15 de junio de 1953 (32 L.P.R.A. sec. 2696); Regla 7.2 de las Reglas de Procedimiento para los asuntos cubiertos por la Ley Núm. 97 de 23 de junio de 1955 del Tribunal Supremo de Puerto Rico (apéndice al Supl. 1961, 34 L.P.R.A. sec. 89), tan pronto dicho informe sea utilizado en la adjudicación judicial del caso, como lo fue en este caso, las partes afectadas y sus abogados, tienen derecho a examinar dicho informe y la Sala sentenciadora está en la obligación de proveer una oportunidad para que las partes afectadas puedan formular objeciones al mismo o presentar prueba en contra de las conclusiones de dicho informe.

Ahora estamos en condiciones de pasar sobre los méritos de la cuestión litigiosa. La ilustrada Sala sentenciadora, al momento de conceder la custodia de las niñas al padre, contrario a lo recomendado en el informe de la especialista, expresó las siguientes razones: "El Tribunal ha tenido el beneficio de un extenso informe sometido por la Oficina de Relaciones de Familia y ha sostenido entrevistas con las partes. De éste se desprende que se trata de dos personas que convivieron como marido y mujer por espacio de once años y producto de esas relaciones han nacido cuatro menores hijas. El demandante (el padre) goza de una mejor posición económica y social. Sin embargo, la demandada (la madre) en su matrimonio reside en un lugar que compara favorablemente con el del demandante en cuanto a acomodo y facilidades para el crecimiento y educación de las menores."

"Tanto el padre como la madre profesan gran cariño a sus hijas y la demandada es muy dedicada al cuidado de ellas."

"En la sentencia original dictada en el caso se dispuso por el Tribunal que las menores permanecieran quince días con una parte y quince con la otra y este arreglo parecía ser satisfactorio para ambos."

"Sin embargo, considerando que las niñas van creciendo y las tres mayores estarán en la escuela el próximo año, el Tribunal estima que no es beneficioso para ellas continuar las relaciones de familia en esa forma ya que nunca tendrán la sensación de un hogar fijo, amén del posible daño que se les cause en sus estudios y relaciones sociales."

El informe rendido por la especialista en relaciones de familia favorece la entrega de las niñas a la madre, no sólo por ser el hogar de la madre más estable, sino porque las niñas se sienten mejor en su compañía. El informe demuestra que el padre tendría que depender para el cuidado de las niñas de un ama de llaves y del cuidado que ocasionalmente les pudiera ofrecer una hermana del padre. El factor de la compañía de la madre en niñas de tierna edad debe ser uno de los criterios dominantes si no hay una objeción moral seria, circunstancia que no existe en este caso: *Muñoz v. Torres*, 75 D.P.R. 507 (Ortiz) (1953), cita precisa a la pág. 513; *Castro v. Meléndez*, 82 D.P.R. 573 (Blanco Lugo) (1961), cita precisa a la pág. 577.

Si bien es cierto que de acuerdo con el informe, el padre tiene mejor posición económica que la madre, esto no sería suficiente para resolver que la custodia pase a favor del padre: *Muñoz v. Torres*, supra, cita precisa a la pág. 514. Además, cualquier desigualdad económica, si afectare el bienestar de las menores, podría la Sala remediarla aumentando la pensión alimenticia de las menores, ya que la misma debe ser fijada de acuerdo con las circunstancias económicas del padre. En cuanto al mejor crédito social del padre, vista la conducta ejemplar de la madre actualmente, dentro de la

concepción moderna de las relaciones de familia en una sociedad democrática, se trata de un valor inefable, por no llamarlo arcaico.

■ En su alegato ante nos, el apelado se queja que su derecho a la patria potestad puede quedar afectado adversamente por un informe preparado a instancia de la propia Sala, de cuyo contenido él no tuvo conocimiento hasta después de fallado el caso. Ya hemos dicho que después de recibido el informe por la Sala, ésta le dio una oportunidad a las partes para manifestarse en cuanto a si estaban conformes o no en someter el caso por dicho informe, contestando la madre en la afirmativa y no contestando el padre en ninguna forma. Es natural que la ilustrada Sala sentenciadora interpretara su silencio como un asentimiento. Como cuestión de derecho, hemos resuelto que la patria potestad no es el criterio dominante en casos de relaciones de familia: *Rodríguez* v. *Torres*, 80 D.P.R. 778 (Belaval) (1958), cita precisa a la pág. 780. En cuanto al aspecto procesal de la cuestión, habiendo tenido él conocimiento posterior de dicho informe y habiéndole favorecido la resolución de la ilustrada Sala sentenciadora, no creemos la cuestión lo suficiente importante como para ordenar una nueva vista de la causa.

La única objeción seria que el padre apelado hace al informe es haberse ocultado el hecho que en la casa de la madre, además de ella y su esposo, estaban hospedadas también dos señoras que trabajan en la Compañía Telefónica de Ponce. Tal vez esta situación se deba a que la pensión alimenticia—de menos de diez dólares semanales por hija—sea inadecuada. Todavía de esta cantidad, en algunas ocasiones, se ha intentado menudos descuentos por los días que las menores pasan con su padre, sin contar cómo esta situación puede gravar el presupuesto casero de un hogar materno supuesto a estar preparado para recibir a las menores en cualquier momento. De todos modos, la ilustrada Sala sentenciadora, si lo creyere conveniente y se sintiera dispuesta a ajustar la pensión alimenticia del padre de acuerdo con las

circunstancias económicas de éste, podría ordenar que cesara dicho inquilinato, dándole un tiempo razonable a la madre para desalojar a las inquilinas de la habitación que ocupan.

■ Es verdad que en el caso de *Millán Rivera* v. *Solis Lazú*, 85 D.P.R. 478 (Belaval) (1962), cita precisa a la pág. 483 se resuelve que las adjudicaciones sobre alimentos y relaciones de familia, por su propia naturaleza, no pueden considerarse finalmente resueltas; pero esto no significa que estén sujetas continuamente a alteraciones o modificaciones, en ausencia de una prueba concreta de carácter moral o de un abandono tal de los deberes de la custodia materna que ponga en peligro el bienestar de las menores. Entendemos que estas menores tienen derecho a descansar ellas de la tensión dramática en que han vivido sus padres.

Se le debe conceder a la madre la custodia de las hijas durante los lunes, martes, miércoles, jueves y viernes hasta las seis de la tarde de cada semana, y al padre durante el viernes después de las seis de la tarde, el sábado y el domingo hasta las seis de la tarde en que deberá devolverlas a casa de la madre, de cada semana. El padre debe pasarle a sus hijas la cantidad de $37.50 semanales además de proveer para ellas los servicios médicos y las medicinas, los derechos de matrícula y los uniformes escolares que éstas necesiten, hasta que otra pensión alimenticia se disponga por el Tribunal Superior de Puerto Rico, Sala de Ponce.

*La resolución de fecha 18 de mayo de 1962 será modificada de acuerdo con los términos de esta opinión.*