## In re JOINT EASTERN AND SOUTHERN DISTRICTS ASBESTOS LITIGATION.

### United States District Court, Eastern District and Southern District of New York.

### In re JOHNS–MANVILLE CORPORATION, et al., Debtors.

### Bernadine K. FINDLEY, as Executrix of the Estate of Hilliard Findley, et al., Plaintiffs,

v.

### Donald M. BLINKEN, et al., Defendants.

### United States Bankruptcy Court, Southern District of New York.

Index No. 4000.
No. CV90–3973.

United States District Court, E. and S.D. New York.

United States Bankruptcy Court, S.D. New York.

Nov. 5, 1993.

---

David T. Austern, Washington, DC, for Manville Personal Injury Settlement Trust.

Leslie Gordon Fagen, Beth Friedman Levine, Paul, Weiss, Rifkind Wharton & Garrison, New York City, for future claimants.

Thomas W. Henderson, Pittsburgh, PA, for plaintiffs.

Francis J. Lawall, J. Gregg Miller, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Distributors Subclass.

James Sottile, Caplin & Drysdale, New York City, for Plaintiff Class.

Anne E. Cohen, Debevoise & Plimpton, New York City, for Owens–Corning Fiberglass, co-defendant; Beneficiary Subclass.

John H. Faricy, Jr., Minneapolis, MN for MacArthur Subclass.

James J. Higgins, Boyar, Higgins & Suozzo, P.A., Morristown, NJ, James L. Stengel, Donovan, Leisure Newton & Irvine, New York City, for Manville Trust.

Professor Margaret A. Berger, Rule 706 Expert.

### MEMORANDUM AND ORDER ON MOTION TO QUASH NOTICE OF SUBPOENA

Before WEINSTEIN, Senior District Judge, BURTON R. LIFLAND, Chief Bankruptcy Judge, and CADEN, Magistrate Judge.

WEINSTEIN, Senior District Judge.

The Legal Representative of Future Claimants seeks a protective order striking the notices of deposition of Professors Joel Cohen, Eric Stallard, and Kenneth G. Manton ("the Panel"). Depositions were scheduled for October 27–29, 1993 by Thomas W. Henderson, Esq., representing some individual claimants. None of the other hundreds of thousands of persons in the subclasses, or their representatives, have sought such depositions.

Depositions were stayed pending a hearing. For the reasons stated below, the motion is granted.

### I. Facts.

As a predicate to the fair distribution of the Manville Personal Injury Trust (the "Trust") assets the courts and the parties must estimate future claims. *See, In re Joint E. & S. Dists. Asbestos Litig.*, 122 B.R. 6 (E. & S.D.N.Y.1990), *rev'd on other grounds, In re Joint E. & S. Dists. Asbestos Litig.*, 982 F.2d 721 (2d Cir.1992) (affirming appointment of Rule 706 panel).

To assist in the necessary projections, Professor Margaret A. Berger was appointed pursuant to Rule 706 of the Federal Rules of Evidence to assemble an appropriate panel of experts. The Rule 706 order stated in pertinent part:

1. Professor Margaret A. Berger ... is appointed as an expert pursuant to Rule 706 of the Federal Rules of Evidence....

2. Professor Berger is empowered and charged with reporting to the court

a. on the feasibility of providing accurate estimates of future claims upon the Trust,

b. on procedures for the collection and tabulation of relevant information with regard to claimants, and for the establishment and maintenance of a data base that will facilitate the estimation of future claims when Trust assets are sold.

3. In connection with the foregoing tasks, Professor Berger is empowered

a. to aid the court in selecting an appropriate Panel of knowledgeable and neutral experts pursuant to Rule 706 of the Federal Rules of Evidence ... by soliciting recommendations from the parties as to knowledgeable and neutral experts who should be appointed to the panel ...;

b. to supervise, organize and co-ordinate the work of the panel after members of the panel are appointed by the court;

c. to act as a conduit between the parties and the panel, and the panel and the court,

i. by obtaining data from the parties relevant to the work of the panel,

ii. by soliciting the parties' views with regard to the work plan of the panel;

d. to undertake such further tasks with regard to estimating future claims as the court may direct.

*In re Joint E. & S. Dists. Asbestos Litig.*, 122 B.R. 6, 7 (E. & S.D.N.Y.1990).

At a fairness hearing Professor Berger suggested a court-sponsored independent study to predict the flow of future claims. She recommended the appointment of Dr. Kenneth G. Manton of Duke University, Associate Research Professor Eric Stallard of Duke University, and Dr. Joel E. Cohen of Rockefeller University as neutral, independent experts. In addition, Dr. Alan M. Ducatman, Professor of Medicine and Director of the Institute of Occupational and Environmental Health at West Virginia School of Medicine, and Dr. Burton H. Singer of the Yale School of Medicine, have, at the courts' request, participated in the Panel's work.

On April 22, 1991, the courts approved Professor Berger's proposals.

After extensive computer and other studies and discussion with consultants, the courts, interested counsel and the Trust, on August 11, 1993 the 706 Panel issued a draft report (the "Report"). The 70 page draft was supported by hundreds of additional pages of calculations, charts, graphs and tables projecting claims to the year 2049. It was filed and docketed and widely distributed.

On August 12, 1993 the courts issued a memorandum and order setting out the method of informal discovery that would be used in an initial evaluation of the Rule 706 Report. "All parties are entitled to be notified of the court's intention to utilize [the Report] and must be provided with some opportunity to review the expert's qualifications and work in advance." *In re Joint E. & S. Dists. Asbestos Litig.*, 830 F.Supp. 686, 694 (E. & S.D.N.Y.1993).

A hearing was set designed to permit all parties to participate in evaluation of the Report. It is described in the order as follows:

The authors of the Rule 706 report will be asked to present their report in the form of sworn testimony. They may be cross-examined. The parties may present their own testimony and exhibits relevant to the question of estimating numbers and volume of future asbestos claims.

*Id.* at 694.

Thereafter, under the direction of the courts, the Report was made available to all parties so they could study and evaluate it. Further data was provided by the Trust. At informal meetings among parties, Panel members and experts for the Trust, details of methodology and suggestions for improvements were thoroughly evaluated. The courts did not attend these sessions.

A hearing on the Report was scheduled for September 28, 1993. On motion of the Trust and all class and sub-class counsel, the hearing was adjourned to allow more time to analyze the results.

The authors of the Report requested time to provide additional information in response to comments on the first draft. Thereafter,

the Panel issued a supplemental draft supported by graphs responding to issues raised by the parties. It was 79 pages in length. Still more meetings were held with counsel to the parties at which the Panel answered questions. The Panel remains open to comments on its Report and continues to undertake further analyses suggested by the parties.

A draft report of the experts retained by the Trust was circulated by the Trust to all interested parties. It provided further opportunity for criticism and analyses of the Panel's drafts.

A hearing by the courts with the magistrate judge present was held on November 3, 1993. The courts heard arguments from the Legal Representative on a motion for a protective order to quash the depositions of the 706 Panel members. Mr. Henderson did not attend the hearing. The court questioned Professor Margaret A. Berger regarding the 706 Panel, as follows:

> The Court: Do you believe, Professor Berger, that there has been any withholding of information or that the parties haven't had an opportunity to fully delve into the thinking of the Rule 706 Panel?
>
> Professor Berger: Absolutely not.
>
> I would point out that this is really a different kind of situation than the usual case, where you have an expert who has an opinion and you wish to probe how he arrived at his opinion.
>
> This is an ongoing project of enormous scientific complexity. The experts have advised me that as a scientific project, this is unique, and that one of the things that I think has worked extremely well is the opportunity that has been afforded in the last year for people to make suggestions to the experts about other avenues to be pursued and they have responded to all of those suggestions, whether they have come from the Trust or for anyone else who has offered some suggestions, and are still engaged very actively in trying to refine their report.
>
> The Court: So you think that as a matter of law you can almost say under Rule 706 that the scientists are acting as technical

and scientific advisors to all parties and the courts rather than as expert witnesses?

> Professor Berger: Yes, I certainly think so.

As noted, no class or sub-class counsel has sought any formal disclosure from the Panel. None of them has objected to the extent of disclosure made by the Panel. In fact, counsel for the subclass of future claimants—the subclass vitally interested in the Report's utility—has moved to quash Mr. Henderson's notice of depositions.

## II. Law.

### A. Integrated Federal Rules of Evidence, Statutory Requirements and Federal Rules of Civil Procedure

The Federal Rules of Evidence and the Federal Rules of Civil Procedure, read in the light of applicable statutes govern the conduct of civil litigation. The two sets of rules and statutes must be read together and integrated. Some authorities have even suggested that Rule 706 should be framed within the Federal Rules of Civil Procedure rather than the Federal Rules of Evidence because of the increasing focus on issues of pre-trial procedure and expert evidence within the Federal Rules of Civil Procedure. *See,* Joe S. Cecil & Thomas E. Willging, Federal Judicial Center, *Court–Appointed Experts: Defining the Role of Experts Appointed Under Federal Rule of Evidence 706,* 1993 at 82–83. Such a shift would allow for a comprehensive pre-trial procedure to resolve disputes which turn on complicated questions of evidence and would give courts increased flexibility to appoint experts, technical advisors and special masters. *Id.*

Rule 706 of the Federal Rules of Evidence provides for depositions of a witness appointed pursuant to Rule 706:

> A witness so appointed shall advise the parties of the witness' findings, if any; *the witness' deposition may be taken by any party;* and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examina-

tion by each party, including a party calling the witness.

Fed.R.Evid. 706 (emphasis added).

Under Rule 706 the opportunity for discovery is protected in order to assist the parties in preparing for trial or hearings at which the 706 expert will testify. *See, Unique Concepts v. Brown,* 659 F.Supp. 1008 (S.D.N.Y. 1987), *aff'd,* 939 F.2d 1558 (Fed.Cir.1991); *United States v. Michigan,* 680 F.Supp. 928, 987–88 (W.D.Mich.1987), *rev'd on other grounds,* 940 F.2d 143 (6th Cir.1991) (expert witness appointed under Rule 706 deposed); *Leesona Corp. v. Varta Batteries Inc.,* 522 F.Supp. 1304, 1312 (S.D.N.Y.1981) (parties deposed expert witness without court supervision).

The requirement for formal depositions of Rule 706 experts has not been literally enforced. Where the expert appointed under Rule 706 does not testify at trial the expert's role has been characterized as that of "technical advisor" to the court and depositions have not been required. *See, Renaud v. Martin Marietta Corp.,* 972 F.2d 304, 308 n. 8 (10th Cir.1992); *Reilly v. U.S.,* 863 F.2d 149 (1st Cir.1988); *Pennwalt v. Durand-Wayland,* 833 F.2d 931 (Fed.Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988); *Hemstreet v. Burroughs Corp.,* 666 F.Supp. 1096, 1124 (N.D.Ill.1987), *rev'd on other grounds,* 861 F.2d 728 (Fed. Cir.1988). For the purposes of this proceeding, the courts will assume that members of the 706 Panel will testify.

While Rule 706 provides for the disclosure of an expert's findings, other Federal Rules of Evidence and the Federal Rules of Civil Procedure give the court discretion to manage the discovery process to minimize expense, delay and waste. Rule 102 of the Federal Rules of Evidence provides that the rules should be construed to eliminate "unjustifiable expense and delay". Fed.R.Evid. 102. Rule 16 of the Federal Rules of Civil Procedure authorizes the court to hold pretrial conferences to discourage "wasteful pretrial activities". Fed.R.Civ.P. 16.

Courts have been mandated by statute in complex civil cases to "identify and limit the volume of discovery available to avoid unnecessary or unduly burdensome or expensive discovery." 28 U.S.C. § 473(a)(3)(C)(i). The statute also provides for the "encouragement of cost-effective discovery through voluntary exchange of information among litigants and their attorneys and through the use of cooperative discovery devices." 28 U.S.C. § 473(a)(4).

A study by the Federal Judicial Center found that Rule 706 expert witnesses reported to the court in a variety of ways including reports, hearings and informal discussion with the parties. "Formal depositions are relatively infrequent, occurring in about one case in four". Joe S. Cecil & Thomas E. Willging, Federal Judicial Center, *Court–Appointed Experts: Defining the Role of Experts Appointed Under Federal Rule of Evidence 706,* 46 (1993). The study found that expert testimony presented few problems where the judge acted as finder of fact and the judge and the parties reviewed the expert's report prior to the proceeding. In that case, "[f]ormal depositions of appointed experts proved to be infrequent, although on occasion an appointed expert met informally with the parties to discuss the report." *Id.* at 93 n. 220. *See also, e.g., Smith v. Armontrout,* 604 F.Supp. 840 (W.D.Missouri 1985) (discovery via evidentiary hearing following submission of 706 expert's report).

Under the current rules, there have been several suggestions for a streamlined pretrial procedure to aid in understanding complex expert testimony that is not readily comprehensible. The study conducted by the Federal Judicial Center suggests that pretrial procedures be used to facilitate more focused consideration of scientific and technical evidence by allowing the judge to:

> [N]arrow disputed issues by encouraging parties and experts to specify their assumptions and designate areas of agreement and disagreement. If questions of admissibility are raised, the proposed procedure would enable the judge to conduct in limine hearings to resolve such questions and to enter summary judgment where disputed issues are not supported by admissible evidence.

Joe S. Cecil & Thomas E. Willging, Federal Judicial Center, *Court–Appointed Experts:*

*Defining the Role of Experts Appointed Under Federal Rule of Evidence 706*, 83–84 (1993). *See also*, Margaret A. Berger, *Procedural and Evidentiary Mechanisms for Dealing with Experts in Toxic Tort Litigation: A Critique and Proposal*, submitted to the Carnegie Commission on Science, Technology, and Government (November 1990).

While class members may sometimes be permitted to conduct nonduplicative discovery on matters of particular concern, individual class members are not encouraged to depose the members of the panel independent of, and prior to, the commencement of any discovery by class and subclass counsel on matters of general interest to all members. *Cf. Manual for Complex Litigation, Second* § 20.222 (1985). The existence of class and subclass counsel responsible for coordinating discovery normally obviates the need for class members to make preemptive discovery demands. *See, Discount Bank & Trust Co. v. Salomon Inc.*, 141 F.R.D. 42, 44 (S.D.N.Y.1992) (appointment of lead counsel requires parties "to pursue discovery as arranged by lead counsel"). As the Second Circuit has noted:

> The benefits achieved by ... the appointment of general counsel, i.e. elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly rebound to the benefit of all parties to the litigation. The advantages of this procedure should not be denied litigants in the federal courts because of misapplied notions concerning interference with a party's right to his own counsel.

*MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir.1958).

■ All parties are entitled to receive the fullest practicable disclosure from the 706 Panel. Nevertheless, courts and parties recognize that cooperative discovery devices, such as those used in the instant case are sometimes the most efficient method for conducting discovery in complex cases. The pre-hearing and hearing procedures provide for extensive exchange of information informally and then for the sworn testimony (orally or in writing) of the 706 Panel and full opportunity for cross-examination at a hearing presided over by the courts. Conflating the depositions within the framework of the hearing can reduce unnecessary and expensive discovery. It can encourage the most useful contribution of all experts. Protecting court-appointed experts from unnecessary and harassing depositions can encourage many of the best experts, who have tended to eschew court proceedings because of their burdensome nature, to come forward and accept Rule 706 appointments.

### B. Post–Daubert Court's Gatekeeper Function

In *Daubert v. Merrell Dow Pharmaceuticals*, —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court rejected the *Frye* test of "general acceptance" within the scientific community as the predominant requirement for admission of expert testimony. It broadened and sharpened the trial judge's gatekeeper role to determine whether "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at ——, 113 S.Ct. at 2799. The adversarial process of cross-examination and the presentation of contrary evidence are the primary means of attacking "shaky but admissible evidence." *Id.* at ——, 113 S.Ct. at 2798. The trial court monitors this process by instructing the jury on the burden of proof and by retaining the power to direct the verdict or to grant summary judgment if the court concludes the evidence is insufficient. *Id.*

Given the trial court's expanded function in evaluating the reliability of expert evidence, it is now more important than ever for the trial court to take an active role in the presentation of expert evidence. *Daubert* may require pretrial or in limine "Daubert hearings" under Rule 104 of the Federal Rules of Evidence to determine whether, and under what conditions, expert testimony is admissible. Such hearings or Rule 16 conferences, or summary judgment formal proceedings or informal consultations among experts, counsel and court may result in necessary education of the court and parties with respect to critical scientific issues without extensive deposition practice. Requiring that the 706

**546**

Panel be questioned and cross-examined at a court-supervised pretrial hearing would allow all parties and the court to review the evidence simultaneously. This would eliminate duplicative discovery and prevent harassing the experts.

### C. Federal Rule of Civil Procedure 26(c)

■ The courts may grant a protective order for good cause shown. Among the appropriate causes to stay depositions are the possibility of oppression and undue expense. Rule 26(c) provides in pertinent part:

> Upon motion by a party ... for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery....

Fed.R.Civ.P. 26(c).

### III. Application of Law to Facts.

■ Deposing the 706 Panel members by one attorney representing a small minority of plaintiffs in a hostile manner would be excessively burdensome and expensive. The 706 Panel members are not represented by counsel. Deposing Professors Cohen, Stallard and Manton would be likely to constitute the kind of harassment which might discourage highly qualified academic researchers in the future from accepting appointment as expert witnesses under Rule 706.

The proposed depositions would result in unnecessary expense. In this limited fund class action, where current estimates set the beneficiaries' share of Trust assets at a fraction of their value, excessive litigation expenses must be avoided. The parties, including the Trust, the plaintiff class, the Legal Representative of Future Claimants, and the representatives of the subclasses, are dispersed throughout the country. Much of the expense that the parties will incur in attending the depositions would be borne by the Trust. Where the depositions are unnecessary, their costs cannot be justified.

### IV. Conclusion.

The process employed by the parties has afforded full ongoing disclosure without the need for formal discovery under the Federal Rules.

The motion to quash the notice to depose the Rule 706 experts is granted.

SO ORDERED.

BURTON R. LIFLAND, Chief Bankruptcy Judge, and CADEN, Magistrate Judge, concur.