EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Amaliz Rentas Nieves<br><br>Recurrida<br><br>v.<br><br>Lorenzo Betancourt Figueroa<br><br>Peticionario | Certiorari<br><br>2018 TSPR 188<br><br>201 DPR \_\_\_\_ |

Número del Caso: CC-2018-356

Fecha: 20 de noviembre de 2018

Tribunal de Apelaciones:

      Región Judicial de San Juan y Caguas

Abogados de la parte peticionaria:

      Lcdo. José A. Rivera García
      Lcda. Brenda Cruz Amador

Abogada de la parte recurrida:

      Lcda. Leila Hernández Umpierre

Materia: Derecho a las partes a recibir copia de los informes sociales en casos sobre custodia, patria potestad o relaciones de familia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Amaliz Rentas Nieves

    Recurrida

      v.                    CC-2018-356     Certiorari

Lorenzo Betancourt Figueroa

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 20 de noviembre de 2018.

En el presente caso, los foros *a quo* denegaron la solicitud de la parte peticionaria para que se le **notificara copia** de unos informes sociales que, sin duda, son pertinentes a la controversia del caso. Esto, fundamentados en nuestra determinación en Colón v. Meléndez, 87 DPR 442 (1963). En esta ocasión, aclaramos la norma de Colón v. Meléndez, supra, y reconocemos el derecho de los abogados de las partes a que en este tipo de caso sobre custodia, patria potestad o relaciones de familia se les notifique copia de tales informes sociales.

**I**

Los hechos pertinentes al caso son muy sencillos. El Sr. Lorenzo Betancourt Figueroa (peticionario) es el padre de una niña que es huérfana de madre, pues ésta falleció víctima de un trágico incidente. La Sra. Amaliz Rentas Nieves (recurrida) es la abuela materna de la menor. Desde el fallecimiento de la madre de la menor, el peticionario había ostentado su custodia. No obstante, en agosto de 2016 la recurrida solicitó la custodia de la menor porque, según alega, la menor quiere vivir en su casa y así poder vivir con su medio hermano, hijo de su difunta madre. Ante esto, el peticionario se opuso al alegar que la menor y él viven muy bien en casa de la madre del peticionario.

Trabada la controversia por la custodia de la menor, el Tribunal de Primera Instancia refirió el asunto a la Unidad Social de Relaciones de Familia (Unidad Social) para que hiciera una evaluación social de la solicitud de custodia. Una vez concluida la evaluación, se presentó el Informe Social de la Trabajadora Social Karen Hernández (TS). En su Informe, la TS recomendó que el peticionario mantuviera la custodia provisional de la menor en lo que concluía el pleito, pero que el tribunal de instancia le ordenara a éste que se realizara pruebas toxicológicas de cabello, coordinadas a través de la propia TS. El foro de instancia acogió estas recomendaciones, concedió la custodia provisional al peticionario y ordenó que en 45 días éste se hiciera la prueba de dopaje recomendada por la TS. Luego

de esta prueba, y dependiendo del resultado, el tribunal de instancia dictaría una sentencia parcial en el caso.

Realizada la prueba de cabello según ordenada por el foro de instancia, el peticionario dio positivo al uso de cocaína. Por esta razón, el tribunal de instancia cambió su determinación inicial y concedió la custodia provisional de la menor a la recurrida y ordenó, a su vez, a la Unidad Social que en 30 días actualizara el Informe que había presentado previamente en el caso. Finalmente, la Unidad Social, a través de la TS, completó un Informe Social Complementario. El 9 de noviembre de 2017, el foro de instancia celebró una vista en la cual el abogado del peticionario tuvo la oportunidad de leer el referido Informe, luego de lo cual argumentó en sala que no procedían las recomendaciones esbozadas en el mismo por estar erradas en derecho y porque reflejaban prejuicio en contra del peticionario. En consecuencia, el peticionario solicitó impugnar dicho Informe, por lo que el foro de instancia señaló una vista para el 9 de diciembre 2017.

Así las cosas, el 4 de diciembre de 2017 el peticionario presentó una *Solicitud de orden permanente para notificación de Informes Sociales*, en la que solicitó al tribunal de instancia que ordenara a la Unidad Social que entregara copia de los informes sociales presentados en el caso, así como los que se presenten en el mismo caso más adelante. No obstante, el foro de instancia, fundamentado en Colón v. Meléndez, supra, denegó la solicitud al señalar

que "[l]os abogados tienen derecho a examinar los informes de la Unidad Social y existe una obligación de proveer oportunidad para que se puedan formular objeciones y presentar prueba contra las conclusiones. […] La Secretaría del tribunal facilitará el examen a los abogados que hayan asumido representación legal en este caso".[1] Inconforme, el peticionario recurrió al Tribunal de Apelaciones, el cual confirmó la determinación del foro de instancia sustentado de igual forma en Colón v. Meléndez, supra, al concluir que "nuestro ordenamiento jurídico no establece ni reconoce el derecho de una parte o su abogado a recibir copia del informe social".[2]

Finalmente, el peticionario presentó un recurso de *certiorari* ante este Tribunal, en el que expuso únicamente el error siguiente:

> Erró el TA al resolver que en el ordenamiento jurídico puertorriqueño no se establece ni se reconoce el derecho de una parte o su abogado a recibir copia del informe social de una trabajadora social de la Unidad de Relaciones de Familia y Asuntos de Menores de la [R]ama [J]udicial en un caso de patria potestad, custodia y relaciones filiales.

Expedido el auto de *certiorari*, el peticionario presentó su Alegato, mas no así la recurrida aun cuando fue

---

[1] Véase *Resolución del Tribunal de Primera Instancia*, Apéndice de la Petición de *certiorari*, pág. 117.

[2] Véase *Resolución del Tribunal de Apelaciones*, Apéndice de la Petición de *certiorari*, pág. 159.

advertida de que si no lo presentaba resolveríamos el caso sin el beneficio de su comparecencia. Sometido el caso en sus méritos, resolvemos.

**II**

**A. El caso Colón v. Meléndez, 87 DPR 442 (1963)**

Como señalamos, los foros *a quo* fundamentaron su negativa a ordenar que el peticionario obtuviera copia de los informes sociales conforme a lo resuelto por este Tribunal en el caso Colón v. Meléndez*, supra.* Sin embargo, considerando la controversia en el caso de autos, Colón v. Meléndez, supra, no constituye norma jurídica en contra del requerimiento del peticionario. Nos explicamos.

Los hechos en Colón v. Meléndez, supra, fueron los que se narran a continuación. Las partes tenían 4 hijas en común. Después de la separación y, aunque la madre tenía la custodia de las niñas, el foro de instancia determinó que las menores permanecerían 15 días al mes con el padre y 15 días con la madre, determinación que las partes aceptaron sin objeción alguna. Sin embargo, cuando la madre contrajo matrimonio con otra persona, el padre hizo un planteamiento sobre el nuevo estado marital de la madre y reclamó la custodia de las hijas. Así, trabada la controversia, el tribunal de instancia ordenó la preparación de un estudio sobre las condiciones de ambos hogares, a los fines de determinar cuál de los dos hogares sería el más adecuado para garantizar el bienestar de las menores. Una vez

presentado el informe, el foro de instancia concedió un término a las partes para que notificaran al tribunal si sometían el caso por dicho informe o si interesaban ofrecer otra prueba.  La madre (a quien se favorecía en el informe) aceptó someter el caso por el informe, **pero el padre nunca contestó ni presentó escrito alguno solicitando una vista para impugnar el informe.**

Así las cosas, el tribunal de instancia dio el caso por sometido y dictó sentencia para conceder la custodia a favor del padre, aun cuando el informe recomendaba lo contrario.  Entonces, la madre recurrió en apelación ante esta Curia y, el padre, como parte recurrida, reclamó que "su derecho a la patria potestad [podía] quedar afectado adversamente por un informe preparado a instancia de la propia Sala, de cuyo contenido él no tuvo conocimiento hasta después de fallado el caso".[3]  Ante esa argumentación y en ese contexto, este Tribunal expresó lo siguiente:

> Asumiendo, aunque sin resolverlo, que el informe preparado por una especialista para utilizarse en la resolución de un caso regulando las relaciones de familia, tenga la misma categoría de documento separado o confidencial sobre nacimiento, adopciones o estudios sociales sobre la familia de un menor […] tan pronto dicho informe sea utilizado en la adjudicación judicial del caso, como lo fue en este caso, las partes afectadas y sus abogados, tienen derecho a examinar dicho informe y la Sala sentenciadora está en la obligación de proveer una oportunidad para que las partes afectadas puedan formular objeciones al mismo o presentar prueba en contra

---

[3] Colón v. Meléndez, 87 DPR 442, 448 (1963).

de las conclusiones de dicho informe.    (Citas omitidas).[4]

En aquella ocasión, este Foro pasó a resolver -en los méritos- el planteamiento del allí apelado, señalando lo siguiente:

> En su alegato ante nos, el apelado se queja que su derecho a la patria potestad puede quedar afectado adversamente por un informe preparado a instancia de la propia Sala, de cuyo contenido él no tuvo conocimiento hasta después de fallado el caso.  Ya hemos dicho que después de recibido el informe por la Sala, ésta le dio una oportunidad a las partes para manifestarse en cuanto a si estaban conformes o no en someter el caso por dicho informe, contestando la madre en la afirmativa y no contestando el padre en ninguna forma.  Es natural que la ilustrada Sala sentenciadora interpretara su silencio como un asentimiento. […] En cuanto al aspecto procesal de la cuestión, habiendo tenido él conocimiento posterior de dicho informe y habiéndole favorecido la resolución de la ilustrada Sala sentenciadora, no creemos la cuestión lo suficiente importante como para ordenar una nueva vista de la causa.  (Énfasis suplido).[5]

Como vemos, en Colón v. Meléndez, supra, la controversia en realidad ni siquiera giró en torno a si el allí apelado tenía derecho a conocer lo que exponía el informe social, sino más bien si éste había ejercido ese derecho.   Nuestra contestación a esa pregunta fue que ciertamente el allí apelado tenía derecho a conocer el contenido del informe, pero al no solicitarlo (aun cuando el foro de instancia le dio la oportunidad), éste

---

[4] Colón v. Meléndez, supra, pág. 446.

[5] Íd., pág. 448.

implícitamente lo renunció. Nótese que en <u>Colón v. Meléndez</u>, supra, ninguna de las partes solicitó que se le notificara la copia del informe social en cuestión.

**En conclusión, en <u>Colón v. Meléndez</u>, supra, claramente reconocimos el derecho de una parte, en circunstancias como las del caso de autos, a poder examinar los informes sociales que sean pertinentes. Sin embargo, de ninguna manera, ya fuera directa o indirectamente, señalamos que como parte de ese examen las partes no tendrían derecho a solicitar copia de tales informes. En otras palabras, en <u>Colón v. Meléndez</u>, supra, se trató de reconocer un derecho, no de limitarlo.**

## B. <u>El Art. 48 de la Ley Núm. 246-2011</u>

En su Alegato, el peticionario plantea que no ha podido encontrar o que no existe un estatuto, regla o norma que establezca de manera explícita o implícita una prohibición a la notificación o entrega de copia de un informe social a las partes en un caso común u ordinario de custodia, como el que nos ocupa. Ciertamente el peticionario tiene razón. Nada hemos encontrado que **prohíba** explícita o implícitamente la entrega de los informes en cuestión a una parte en un caso común u ordinario de custodia. Los foros *a quo* fundamentaron su determinación en nuestra decisión de <u>Colón v. Meléndez</u>, supra, pero, como ya adelantamos, esa jurisprudencia no es norma jurídica en contra del requerimiento del peticionario.

Por otro lado, aunque en el contexto de un caso común u ordinario de custodia tampoco hemos encontrado una norma particular que **conceda o reconozca** el derecho de las partes a obtener copia de los informes sociales, sí existe tal norma en los casos en que se disputa la custodia de un menor como producto de la remoción por parte del Estado. Esto en virtud de lo dispuesto en la Ley Núm. 246-2011, según enmendada, conocida como la Ley para la Seguridad, Bienestar y Protección de los Menores (Ley 246), 8 LPRA secs. 1101-1206 (2014 & Supl. 2018). La Ley 246 reconoce como uno de sus propósitos el que en ocasiones el Estado tiene la necesidad de, en ciertas circunstancias, ejercer la custodia de emergencia sobre un menor "cuando tuviere conocimiento o sospecha de que existe un riesgo para la seguridad, salud e integridad física, mental [o] emocional del menor".[6] La remoción de un menor en estas circunstancias, una vez ratificada por el tribunal de instancia, implica que el Estado, a través del Departamento de la Familia (Departamento), adquiere la custodia provisional del menor.

La concesión de la custodia provisional del menor al Departamento inicia un proceso judicial a través del cual la propia agencia tiene que diseñar y llevar a cabo un plan de servicio dirigido a lograr, de ser posible, el retorno del menor al hogar y la reunificación de la familia.[7] Este

---

[6] 8 LPRA sec. 1133. Véase, además, 8 LPRA secs. 1147-1149.

[7] 8 LPRA sec. 1159.

proceso judicial conlleva la celebración de vistas de seguimiento y una vista final en la que el Departamento informará al foro de instancia si es viable la reunificación familiar, conforme a los mejores intereses, el bienestar y la seguridad del menor.[8]  Durante todo este procedimiento judicial, el padre, la madre, el tutor o cualquier persona que ostente la custodia legal del menor al momento de ser removido, puede comparecer representado por abogado y participar del proceso en defensa de sus derechos e intereses en relación con ese menor.  En ese contexto, el Art. 48 de la Ley 246, *supra*, dispone -en lo pertinente- lo siguiente:

> […]
>
> En cualquier procedimiento judicial relacionado con los casos de protección a que se refiere este capítulo, el tribunal considerará como evidencia los informes periciales, sociales y médicos.
>
> […] Los informes médicos al igual que el informe social serán confidenciales, excepto que el tribunal determine que existe justa causa para la divulgación de la información. **Se notificará a la representación legal de las partes copia de los informes para su estudio, el mismo día que se somete**. Dichos informes serán admitidos en evidencia a tenor con lo dispuesto en las Reglas de Evidencia de Puerto Rico. **Las partes con derecho a obtener copia de los informes serán responsables de mantener en estricta confidencialidad el contenido de los mismos y limitarán su uso al procedimiento establecido en virtud de este capítulo**. (Énfasis suplido).[9]

Como surge claramente del texto del Art. 48 de la Ley 246, *supra*, en los procedimientos al amparo de dicho

---

[8] 8 LPRA secs. 1151 y 1152.

[9] 8 LPRA sec. 1158.

estatuto, los informes sociales se consideran confidenciales, **pero las partes tienen derecho a que se les notifique copia de éstos.**[10] De manera tal que, si la presente controversia se diera en el escenario de un caso en el que se disputa la custodia de un menor en el contexto de una remoción según los parámetros de la Ley 246 y no de un caso común y ordinario por la custodia de un menor, es claro que el derecho cobijaría a la parte peticionaria en su requerimiento de que se le notifiquen los informes sociales. Nótese que en ambos procedimientos, tanto de custodia ordinaria como en virtud de la Ley 246, *supra*, la causa de acción envuelta es la misma: la disputa por la custodia de un menor en la búsqueda de su mejor bienestar.

La interrogante que cabe entonces es la siguiente: considerando que el legislador entendió como válido un requerimiento como el que hace el aquí peticionario en los procesos judiciales al amparo de la Ley 246, *supra*, ¿debe interpretarse el aparente vacío de una disposición similar en los pleitos de custodia entre partes privadas como la intención del legislador de tratar la situación de manera distinta? Nos persuade la argumentación del peticionario en el sentido de que tal interpretación no sería razonable o la misma carecería de lógica. Ciertamente, si las causas de acción y el objeto de éstas son similares en ambos procedimientos, no sería razonable que en uno —al amparo de

---

[10] Adviértase que existen leyes especiales que catalogan los informes o expedientes bajo su mandato como confidenciales y no contemplan su notificación.

la Ley 246, *supra*- se les conceda a todas las partes el derecho a ser notificado con copia de los informes sociales que produzcan los peritos de las otras partes, y en el otro no.

C. **La Regla 709 (a) de Evidencia y el debido proceso de ley**

No cabe duda de que el cuerpo de trabajadores sociales de la Unidad Social de Relaciones de Familia y Asuntos de Menores de la Rama Judicial son peritos al servicio del Tribunal.[11] Siendo así, están claramente sujetos a las disposiciones que sobre esa materia establecen nuestras Reglas de Evidencia. En ese contexto, la Regla 709 (a) de Evidencia -en lo pertinente- establece lo siguiente:

> La persona nombrada como perita deberá notificar a las partes sus hallazgos, si alguno; podrá ser depuesta por cualquier parte y podrá ser citada para testificar, por el tribunal o cualquiera de las partes. La persona nombrada perita estará sujeta a contrainterrogatorio por cualquiera de las partes, incluyendo la que la citó.[12]

En primer lugar, y como surge claramente de su texto, un perito **está obligado**, conforme a esta regla, a "notificar a las partes sus hallazgos". Con relación a esta obligación, es menester hacer referencia a la Regla 706 de las Reglas de Evidencia Federal,[13] pues de ésta adoptamos el esquema que se estableció en el inciso (a) de la Regla 709 de

---

[11] Véase Pena v. Pena, 164 DPR 949 (2005).

[12] 32 LPRA Ap. VI, R. 709 (a).

[13] 28 USC Fed. Rules Evid., R. 706.

nuestras Reglas de Evidencia.[14]  Como nuestra regla local,

la Regla 706 de Evidencia Federal también establece el deber

del perito de notificar a las partes de cualquier hallazgo.[15]

Con relación a este deber, la Regla 706 de Evidencia Federal

se ha interpretado en el sentido de que esta notificación

puede hacerse de distintas maneras.[16] Sin embargo, lo que

queda claro es el deber que tiene el perito de notificar sus

hallazgos, de manera que se le proporcione a las partes el

suficiente tiempo para prepararse, en caso de que pretendan

refutarlos.[17]  Ante el texto claro de nuestra regla local,

así como de su equivalente a nivel federal, no hemos

encontrado disposición en contrario ni vemos razón alguna

que nos permita exceptuar a los peritos en los casos de

custodia del cumplimiento con la Regla 709 (a) de Evidencia,

---

[14] Informe del Comité Asesor Permanente de las Reglas de Evidencia, Secretariado de la Conferencia Judicial y Notarial, Marzo 2007, pág. 455

[15] El texto de la Regla 706 de las Reglas de Evidencia Federal, en lo pertinente, señala lo siguiente:

> **Rule 706. Court-Appointed Expert Witnesses**
> (a) Appointment Process. On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. …
> (b) Expert's Role. … **The expert:**
> (1) **must advise the parties of any findings the expert makes;** (Énfasis suplido).

[16] Computer Associates Intern., Inc. v. Altai, Inc., 982 F.2d 693, 712-713 (2d Cir. 1992); DeAngelis v. A. Tarricone, Inc., 151 F.R.D. 245, 247 (S.D. N.Y. 1993); In re Joint Eastern and Southern Districts Asbestos Litigation, 151 F.R.D. 540, 542-545 (E.D. N.Y. 1993).

[17] Procedural Issues, 29 Fed. Prac. & Proc. Evid. Sec. 6305 (2d ed.). Véanse, además: In re Joint Eastern and Southern Districts Asbestos Litigation, 830 F. Supp. 686, 694 (E.D. N.Y. 1993); Sibley v. Sprint Nextel Corp., 298 F.R.D. 683 (2014).

*supra*, en cuanto a su deber de notificar sus informes sociales.

En segundo lugar, resalta en el texto del inciso (a) de la Regla 709 de Evidencia un importante elemento de debido proceso de ley que es menester advertir. En Rexach v. Ramírez*,* 162 DPR 130 (2004), citando a Meyer v. Nebraska*,* 262 U.S. 390, 399-400 (1923) y Skinner v. Oklahoma*,* 316 U.S. 535 (1942), señalamos que en el concepto "libertad" de la Enmienda Decimocuarta están incluidos, entre otros, el derecho a casarse, a establecer un hogar y a criar a los hijos.[18] Así, señalamos que "[l]os menores de edad no son meras criaturas del Estado; por ende, la relación entre padres e hijos está protegida constitucionalmente y se ha establecido que los padres tienen derecho a decidir sobre el cuido, la custodia y el control de sus hijos".[19]

Aún más, en Sterzinger v. Ramírez, 116 DPR 762, 777 (1985), expresamos que "el derecho del padre [o la madre] a la compañía del hijo, aunque sea esporádica, no es mera derivación del bienestar del niño, sino parte también de derechos fundamentales que nacen de la paternidad [o la maternidad], de nociones de libertad y justicia que una sociedad sujeta a limitaciones constitucionales no puede ignorar del todo". Es claro, entonces, que el proceso de

---

[18] Rexach v. Ramírez*,* 162 DPR 130(2004).

[19] Íd., págs. 145-146. Véanse, además: Pierce v. Society of Sisters, 268 U.S. 510 (1925); Wisconsin v. Yoder, 406 U.S. 205 (1972); Stanley v. Illinois, 405 U.S. 645 (1972); Quilloin v. Walcott, 434 U.S. 246 (1978); Washington v. Glucksberg, 521 U.S. 702 (1997).

privar de custodia a cualquiera de los progenitores para que solo uno obtenga -por el mejor bienestar del menor- el pleno disfrute de ésta, conlleva claras consideraciones de debido proceso de ley.

En ese contexto, el debido proceso de ley procesal exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, entre los que se encuentran el que una parte tiene **derecho a examinar la evidencia presentada en su contra y a contrainterrogar a los testigos de la otra parte**.[20]  Claramente, el texto del inciso (a) de la Regla 709 de Evidencia busca proteger esos requisitos mínimos procesales que cobijan a las partes, pues señala que el perito no solo tendrá que notificar sus hallazgos, sino que estará sujeto a contrainterrogatorio con relación a esos hallazgos.  En cuanto a ésto, valga citar las expresiones de la compañera Jueza Asociada señora Mildred Pabón Charneco, quien -ante una controversia similar a la que hoy nos ocupa- expuso lo siguiente como jueza ponente en el Tribunal de Apelaciones:

> A fin de velar porque una determinación de custodia guarde todas las garantías circunstanciales de corrección, las partes deben tener no sólo una oportunidad pro-forma de presentar y refutar prueba, sino que puedan hacerlo con efectividad.  A tales efectos, es necesario que las partes afectadas por un Informe de una Trabajadora Social puedan formular objeciones al mismo y/o presentar prueba en contra de las conclusiones de dicho Informe.  En

---

[20] Díaz Carrasquillo v. García Padilla, 191 DPR 97 (2014); Domínguez Castro v. E.L.A., 178 DPR 1 (2010); Vázquez González v. Mun. San Juan, 178 DPR 636 (2010); Hernández v. Secretario, 164 DPR 390 (2005). Véase, además, Stanley v. Illinois, 405 U.S. 645 (1972).

la consecución de este fin, deben tener acceso a los Informes Sociales, según lo solicitado por el peticionario.

Entendemos que en el presente caso se le violenta el debido proceso de ley al impedirle al peticionario que copie los expedientes de sus hijos a fin de poder defenderse adecuadamente, contrainterrogar los peritos de la recurrida y presentar a sus propios peritos, de considerarlo pertinente. Este acceso le garantiza el derecho constitucional a un debido procedimiento de ley. Máxime cuando, hace más de tres (3) décadas, en esta jurisdicción se reconoció a las partes y a sus abogados el derecho a examinar el informe preparado por un especialista para ser utilizado en la resolución de disputas sobre custodia. Asimismo, está establecido que los tribunales deben proveer a la parte afectada una oportunidad para formular objeciones o presentar prueba en contra de las conclusiones de dicho informe.[21]

Ciertamente, es claro que la Regla 709 (a) de Evidencia, *supra,* establece una obligación en relación con los peritos, incluyendo los miembros de la Unidad Social de Relaciones de Familia, que obedece al proceso justo e imparcial que exige el debido proceso de ley.

**D. La Sección 405 del "Uniform Marriage and Divorce Act"**

La Ley Uniforme de Matrimonio y Divorcio (*Uniform Marriage and Divorce Act*) es un estatuto aprobado por el Congreso federal de los Estados Unidos a inicio de la década de los 70, que logró la uniformidad de los procesos para conceder divorcios no culposos entre los cincuenta estados de la Nación Americana. La Sección 405 de esta ley dispone que en los casos en que se deba establecer la custodia de

---

[21] Véase, con carácter persuasivo, Marrero v. López Negrón (KLCE05001093), Sentencia del Tribunal de Apelaciones del 13 de septiembre de 2005.

algún menor en virtud de este estatuto, el tribunal puede ordenar una investigación cuyo resultado se presentará en un informe a la consideración del tribunal y que puede incluir, a su vez, informes periciales de psiquiatras y otros expertos. Con relación a esos informes, el inciso (c) de la Sección 405 de esta Ley establece lo siguiente:

> (c) The court shall mail the investigator's report to counsel and to any party not represented by counsel at least 10 days prior to the hearing.

Como vemos, la Sección 405 (c) de la Ley Uniforme de Matrimonio y Divorcio federal exige que se le notifique a las partes los informes sociales que hayan presentado ante el tribunal, cuyo contenido incluye información pericial. Hay múltiples estados que han conformado su legislación estatal a la Sección 405 (c) de la Ley Uniforme de Matrimonio y Divorcio federal, estableciendo que el tribunal o su secretario tiene que notificar copia del informe social al abogado de la parte o la parte que comparece por derecho propio, por lo menos 10 días antes de la vista de custodia.[22]

---

[22] Arizona (Arizona Revised Statutes Sec. 25-406 (G)); Indiana (Indiana Code Sec. 31-17-2-12 (c)); Kentucky (Kentucky Revised Statutes Annotated Sec. 403.300 (3)); Minnesota (30A Minnesota Statutes Annotated Sec. 518.67); Missouri (Missouri Revised Statutes Sec. 452.390 (3)); Montana (Montana Code Annotated Sec. 40-4-215 (4)); Virginia Occidental (West Virginia Code Sec. 48-9-301 (c)) y Washington (Revised Code of Washington Sec. 26.09.220 (3). Véanse, además: California (California Family Code Sec. 3111 (a)), Wisconsin (Wisconsin Statutes & Annotations Sec. 767.405 (14)((b)(l)), Colorado (Colorado Revised Statutes Sec. 14-10-127 (3)); Carolina del Sur (South Carolina Code Sec. 63-3-830 (A)(6)); Connecticut (General Statutes of Connecticut 46b-815-§46b- 7); Florida (VI Florida Statutes Annotated Sec. 61.20 (1)); ldaho (Idaho Rules of Civil Procedure Rule 16 (q)(7)); Illinois (750 Illinois Compiled Statutes 5/604.10 (b)); Luisiana (Louisiana Revised Statutes Sec. 9:358.5 (B)); Maine (19-A Maine Revised Statutes Sec. 1507 (3)(A)(3)); Nuevo Hampshire (New Hampshire Revised Statutes 461-A:16 (III)); Nuevo México (New Mexico Rule Annotated 1.053.3 (F)(4));

**E. La Regla 62.1 (b) de Procedimiento Civil de 2009**

Los casos y asuntos que se dilucidan en las Salas de Familia de nuestros tribunales son, por su naturaleza, procedimientos cerrados al público. Lógicamente, y de esa misma forma, los expedientes de los asuntos que se dilucidan en los procesos de familia son privados, esto es que los expedientes no están disponibles al público y solo tienen acceso a ellos los abogados de las partes y aquellas personas con un interés legítimo. La Regla 62.1 (b) de Procedimiento Civil, 32 LPRA Ap. V, dispone -en síntesis- que la información sobre los expedientes de los casos que por ley o por el tribunal, a iniciativa propia o a solicitud de parte, se disponga su confidencialidad, así como las copias de éstos, podrán ser mostradas o entregadas solamente a personas con legítimo interés o a otras personas mediante una orden judicial y por causa justificada.[23]

---

Oklahoma (Oklahoma Statutes Sec. 43-107.3 (A)(2)(d)); Pennsylvania (231 Pennsylvania Code Rule 1915.11-2 (c)); Texas (Family Code Sec. 107.002 (g)).

[23] La Regla 62.1 (b) de Procedimiento Civil, 32 LPRA Ap. V, dispone lo siguiente:
> (b) La información sobre los expedientes de los casos que por ley o por el tribunal, a iniciativa propia o a solicitud de parte, se disponga su confidencialidad, así como las copias de éstos, podrán ser mostradas o entregadas sólo a personas con legítimo interés, o a otras personas mediante una orden judicial y por causa justificada. Sólo se suministrarán, previa muestra de necesidad y con el permiso expreso del tribunal, a funcionarios o funcionarias del Tribunal General de Justicia en sus gestiones oficiales y aquellas personas de acreditada reputación profesional o científica que prueben por escrito su interés en obtener información para la realización de sus labores oficiales, estudios o trabajos, y siempre bajo las condiciones que el juez o la jueza estipule.

Ahora bien, desde Colón v. Meléndez, supra, dispusimos que las partes afectadas y sus abogados en un caso de custodia tienen derecho a examinar los informes sociales que son presentados ante la consideración del tribunal. De manera que, sin entrar a dilucidar si los informes sociales preparados por la Unidad Social, por orden del tribunal, son en realidad "confidenciales" -en Colón v. Meléndez también obviamos hacer esa clasificación- lo cierto es que las partes en un caso de custodia tienen un claro derecho a examinar tales informes. Debido a las consideraciones de debido proceso de ley que acompañan este derecho, el mismo no puede ser obliterado a no ser por circunstancias claras y de gran peso. Aun así, si el tribunal, en el uso de la discreción que le provee la Regla 62.1 (b) de Procedimiento Civil, *supra*, entiende que es necesario declarar un informe social -o parte de éste- como información "confidencial", la propia regla dispone que en esa instancia dicho expediente, así como las copias que se reproduzcan, podrán ser mostradas o entregadas a las partes o sus abogados mediante una orden judicial y por causa justificada.

## III

En el presente caso, los requisitos mínimos del debido proceso de ley exigen que las partes tengan la oportunidad de examinar la prueba pericial que le es adversa y contrainterrogar a los peritos que la produjeron, esto para propósitos de impugnación. Sin embargo, es claro que tal derecho le ha sido limitado al peticionario. Aunque este

derecho parecería satisfacerse con el hecho de que las partes tengan acceso a examinar y tomar notas de los informes sociales, ciertamente esa no es la forma de cumplir cabalmente con el debido proceso de ley en estos casos. Para que una parte pueda impugnar **efectivamente** a un perito, es necesario -en primer lugar- examinar, de una manera igualmente **efectiva**, el informe pericial que produjo ese perito.

Queda claro que un abogado que tiene el deber de prepararse para impugnar un informe social y confrontar al perito que lo produjo, no debería tener que depender solamente de las notas que, de alguna manera y con limitaciones de tiempo (entre otras condiciones), pudiera haber tomado de tal informe.[24]     Todo esto provoca naturalmente que esas notas puedan tener errores o sean insuficientes o imprecisas. **En conclusión, la manera más justa, efectiva y en cumplimiento con el debido proceso de ley para que un abogado pueda prepararse para cumplir cabalmente con su deber en relación con los intereses de su**

---

[24] Como bien señala el peticionario en su Alegato, la práctica y la política no escrita de las Unidades Sociales de la Rama Judicial de no entregar copia de los informes sociales a los abogados, aumenta innecesariamente los costos de la litigación y ocupan innecesariamente el tiempo del abogado.  Esto se debe a que, en muchas ocasiones, el abogado tiene que viajar innecesariamente al tribunal para copiar o resumir el informe social de manera que pueda estar preparado para la vista en la cual se va a dilucidar ese informe social.

Hay que tener presente que, en muchas ocasiones, los informes sociales suelen ser extensos (más de 30 páginas), por lo que leerlos, copiarlos o resumirlos ocupa muchas horas al abogado.  Además, las Secretarías de los tribunales tienen un horario limitado durante días y horas laborables solamente, en ocasiones el expediente no puede ser examinado porque está en la oficina del juez o no puede ser localizado y hay muchas distracciones o ruidos en las Secretarías, entre otras consideraciones prácticas.

**cliente, es obteniendo copia fiel y exacta de ese informe social.**

Por último, solo nos resta señalar lo siguiente. Las reiteradas determinaciones de muchos de los foros *a quo* de denegar copia de los informes sociales en este tipo de casos, más que un desconocimiento de la norma jurídica parecería un poco sugerir la existencia de una preocupación por la forma en que los representantes legales de las partes o las partes mismas pudieran manejar la información o los documentos relacionados a estos informes. Evidentemente, en cuanto a nuestra clase togada se refiere, tal resquemor -de ser cierto- no se justifica debido a que Puerto Rico cuenta con una clase togada responsable y, en su inmensa mayoría, son muy conscientes de sus responsabilidades éticas en cuanto a los procesos judiciales, los tribunales y la sociedad. No empece a ello, no está de más adoptar mediante esta pauta el *caveat* que dispone el Art. 48 de la Ley 246, *supra*, con relación a estos informes sociales, en el sentido de que todas las partes "**serán responsables de mantener en estricta confidencialidad el contenido de los mismos…**".

Además, reiteramos que el derecho de una parte con interés a recibir copia de los informes sociales en nada limita la facultad de los jueces y juezas de los foros de instancia para, en el sano ejercicio de su discreción judicial, tomar las medidas que entiendan necesarias para, a la luz de las circunstancias particulares de cada caso, imponer restricciones al uso y a la notificación de tales

informes. Esto, en atención a la confidencialidad inherente de los mismos y la posibilidad de que derechos de terceros puedan verse afectados por su divulgación.

**IV**

Por los fundamentos que anteceden, se revocan las determinaciones de los foros *a quo* y se ordena a la Unidad Social de Relaciones de Familia a que, en un término no mayor de 10 días, notifique al peticionario el informe requerido, y cualquier otro informe, presente y futuro, que sea pertinente a este caso.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Amaliz Rentas Nieves

    Recurrida

        v.                CC-2018-356     Certiorari

Lorenzo Betancourt Figueroa

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 20 de noviembre de 2018.

        Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revocan las determinaciones de los foros *a quo* y se ordena a la Unidad Social de Relaciones de Familia a que, en un término no mayor de 10 días, notifique al peticionario el informe requerido, y cualquier otro informe, presente y futuro, que sea pertinente a este caso.

        Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez concurren con el resultado sin opinión escrita.

                        José Ignacio Campos Pérez
                        Secretario del Tribunal Supremo