Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| D C VERRENGIA T/C/C D C STERLIN<br><br>DEMANDANTE RECURRIDA<br><br>V.<br><br>JUSTIN ANTHONY VERRENGIA<br><br>DEMANDADO PETICIONARIO | KLCE202301000 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2022RF00483<br><br>Sala: 4003<br><br>Sobre:<br><br>CUSTODIA, ALIMENTOS |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard, y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de septiembre de 2023.

Justin Anthony Verrengia (en adelante señor Verrengia o peticionario) presentó un recurso de *Certiorari* en el que solicita que revoquemos dos determinaciones emitidas por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante TPI). En la *Resolución* emitida el 18 de julio de 2023 el foro de instancia amplió las relaciones paternofiliales, más no concedió su solicitud de custodia compartida en esta etapa del procedimiento. En la *Resolución* emitida el 9 de agosto de 2023, declaró *sin lugar* su solicitud de reconsideración y reiteró que esperará al informe social para emitir una determinación final sobre custodia.

Luego de examinar detenidamente el expediente electrónico de este caso, acordamos *expedir* el auto solicitado y *confirmar* las determinaciones recurridas bajo los fundamentos y consideraciones siguientes.

I

Durante su matrimonio el señor Verrengia y D C Verrengia t/c/c D C Sterlin (en adelante señora Sterlin) procrearon una niña que actualmente tiene 9 años. El 12 de diciembre de 2019 se divorciaron por consentimiento mutuo en sede notarial y como parte de las estipulaciones de su divorcio

acordaron mantener custodia compartida de la menor y hacerse cargo de manera equitativa de sus necesidades alimentarias.

El 23 de marzo de 2022, la señora Sterlin presentó una *Demanda* contra el señor Verrengia en la cual solicitó se le concediera la custodia de la menor, se impusiera una pensión alimentaria al peticionario y se estableciera un plan de relaciones paternofiliales, entre otras reclamaciones. Según alegó, después del divorcio todos vivieron bajo el mismo techo hasta el 15 de marzo de 2022 cuando la Sala Municipal del TPI dictó una *Orden de Protección Ex Parte* en contra del peticionario en la cual le adjudicó la custodia provisional de la menor hasta que una Sala Superior del tribunal dispusiera algo distinto. Alegó además que siempre ha sido la cuidadora principal de la menor y que desde la Pandemia del COVID-19 le ofrece *homeschooling*.

El señor Verrengia fue emplazado y citado para la vista de pensión alimentaria. En el interín, la señora Sterlin solicitó autorización para trasladarse con la menor fuera de la jurisdicción de Puerto Rico mas el foro de instancia denegó su petición y prohibió que la menor fuese sacada del país sin la autorización del señor Verrengia o del tribunal. El peticionario no compareció en el tiempo correspondiente por lo que el tribunal le anotó la rebeldía. Tras comparecer representado por abogado el tribunal levantó la anotación y le concedió un término para contestar la demanda.

El señor Verrengia presentó su *Contestación a Demanda y Reconvención*. En su contestación alegó que conceder la custodia monoparental a la señora Sterlin no representa el mejor interés de la menor y en su reconvención solicitó custodia compartida en semanas alternas. Con posterioridad, solicitó que se ordenaran relaciones paternofiliales provisionalmente pues desde la expedición de la *Orden de Protección Ex Parte* no se compartía con la menor.

El **24 de mayo de 2022** el tribunal ordenó a la Unidad de Trabajo Social realizar un estudio sobre custodia monoparental, custodia compartida y relaciones filiales. A su vez ordenó a la trabajadora social a

ofrecer recomendaciones provisionales en 15 días y someter su plan de trabajo. El 7 de junio de 2022 el Informe Social fue asignado a la señora Jessica Santiago Torres, Trabajadora Social a quien el tribunal le concedió hasta el **6 de octubre de 2022** para presentarlo. [1]

Durante el trámite del presente litigio el peticionario solicitó al tribunal que autorizara relaciones abuelo filiales entre la menor y su abuela paterna, a su vez solicitó que se le permitiera relacionarse con la menor. La recurrida se opuso a la solicitud de relaciones abuelo filiales, por no haber sido solicitadas por la abuela paterna directamente. En cuanto a las relaciones paternofiliales expresó su anuencia siempre y cuando fueran bajo supervisión. El 16 de septiembre del 2022 el TPI denegó la solicitud de relaciones abuelo filiales bajo el fundamento que debían ser solicitadas en un pleito aparte, mas concedió las relaciones paternofiliales de forma supervisada por Family Hope.

El 29 de noviembre de 2022 la Trabajadora Social solicitó al tribunal una nueva prórroga ya que, por sus vacaciones regulares, y por las citas con la recurrida que no pudieron concretarse, no había concluido el Informe Social. De otro lado, el peticionario solicitó al tribunal que instruyera a la Unidad Social a incluir en el informe un análisis de enajenación parental por parte de la recurrida. El TPI ordenó que se incluyera en el estudio el análisis sobre enajenación parental y autorizó la prórroga para el **31 de enero de 2023.** [2]

El 14 de diciembre de 2022 el señor Verrengia solicitó al tribunal una vista de emergencia para ordenar relaciones paternofiliales durante el periodo navideño ya que había tratado de coordinarlas a través del Programa Hope, pero aún no habían podido concretarse. [3] Con posterioridad, informó que había sido absuelto mediante *Sentencia* de un cargo criminal por infracción al Art. 3.1 de la Ley Núm. 54 por lo que reiteró

---

[1] El TPI concedió una prórroga a la Trabajadora Social hasta el **9 de diciembre de 2022** para rendir el Informe Final, según solicitado.
[2] *Orden* del 14 de diciembre de 2022.
[3] Sometida el 14 de diciembre de 2022.

su solicitud.[4] La señora Sterlin expresó nuevamente su anuencia a las relaciones paternofiliales supervisadas. El TPI se dio por enterado de los asuntos traídos ante su consideración, sin embargo, se reservó la determinación sobre las relaciones paternofiliales hasta que la Trabajadora Social emitiera su recomendación.[5] Debido al periodo de vacaciones regulares de la Trabajadora Social y otras ausencias por motivos de salud, la recomendación requerida no se emitió previo al periodo navideño.

El 30 de enero de 2023 el señor Verrengia sometió una moción urgente informando al tribunal que la Sala Municipal había denegado la *Orden de Protección* al amparo de la Ley Núm. 54 solicitada en su contra por la señora Sterlin por lo que solicitó que se restauraran las relaciones paternofiliales que habían quedado suspendidas en virtud de la orden ex parte.[6] La Trabajadora Social recomendó que las relaciones paternofiliales se realizaran a través del Proyecto Encuentro todos los miércoles y sábados de 9:00AM – 5:00PM. A tales efectos, el 15 de febrero de 2023 el TPI ordenó las relaciones paternofiliales según recomendadas y concedió una prórroga hasta el **31 de marzo de 2023**, según solicitada por la Trabajadora Social, para la entrega del Informe Final.

El 3 de abril de 2023 la señora Sterlin solicitó se le autorizara relocalizarse con la menor en Florida toda vez que había obtenido becas para continuar estudios universitarios en dicho estado. El TPI refirió el asunto a la Trabajadora Social para que incluyera en su informe un análisis sobre relocalización de la menor. El señor Verrengia se opuso a la relocalización solicitada por lo que el foro de instancia resolvió que hasta tanto no se culmine el informe final y se presente el Informe Interestatal correspondiente no dispondría sobre la relocalización. La recurrida contrató a la Trabajadora Social Carmen R. Bruselas para realizar el referido estudio interestatal a quien el tribunal autorizó el 7 de junio de 2023.

---

[4] Sometida el 27 de diciembre de 2023. La *Sentencia* absolutoria es del 19 de enero de 2022.

[5] *Orden* del 9 de enero de 2023.

[6] La *Resolución* denegando la Orden de Protección fue emitida el 25 de enero de 2023.

El 13, 15 y 16 de junio de 2023 el señor Verrengia solicitó que se dictara una orden urgente autorizando que la menor pernoctara en su hogar del 16 al 18 de junio por ocasión del fin de semana de padres. No fue hasta el 23 de junio de 2023 que el tribunal atendió sus mociones concediéndole un término para que comunicara si había compartido con la menor el día de los padres.[7] El peticionario informó que no había compartido con ésta, lo que, a su juicio, era otro ejemplo de enajenación parental. Solicitó como remedio provisional que se restableciera la custodia compartida mientras se dilucidaba la presente causa de acción considerando que debido a la solicitud de traslado de la señora Sterlin y al estudio interagencial requerido, la finalización del Informe Social se había retrasado nuevamente. El TPI solicitó a la Trabajadora Social expresar su posición en cuanto al remedio provisional solicitado.

El 17 de julio de 2023 la Trabajadora Social sometió el informe solicitado para el cual, según indicó, discutió el asunto con: la Sra. Wanda Robles, Trabajadora Social de Proyecto Encuentro, la Sra. Sabrina Santos, Trabajadora Social contratada por el Departamento de la Familia que fue asignada para investigar un referido realizado al padre en el 2022. También entrevistó a ambos padres y a la menor de forma presencial e individual en su oficina. En resumidas cuentas, recomendó ampliar las relaciones paternofiliales de manera provisional a fines de semanas alternos comenzado jueves a las 3:00PM hasta sábado a las 3:00PM, usando como lugar de entrega el Proyecto Encuentro. También recomendó comunicación virtual de parte del padre con la menor todos los domingos y martes de 7:00PM a 8:00PM. En vista de que los padres no se comunican sugirió que se comuniquen los asuntos relacionados a la patria potestad y las relaciones paternofiliales a través de un intermediario o coordinador de parentalidad.

---

[7] Previamente, la Trabajadora Social había notificado al tribunal que estaría de vacaciones del 26 de junio al 17 de julio y que una vez recibiera el informe interagencial de la señora Bruselas notificaría la fecha en que presentará el informe final sobre custodia y traslado.

El 18 de julio de 2023 el TPI emitió la primera *Resolución* recurrida acogiendo las recomendaciones de la Trabajadora Social. En ésta ordenó que a partir del 3 de agosto de 2023 y sujeto a que las partes contraten un coordinador de coparentalidad, se ampliaran las relaciones paternofiliales a fines de semanas alternos comenzado jueves a las 3:00PM hasta sábado a las 3:00PM, usando como lugar de entrega el Proyecto Encuentro y autorizó la comunicación virtual con el padre todos los domingos y martes de 7:00PM a 8:00PM. Ordenó, a su vez, que se matriculara a la menor en una escuela lo antes posible.

En desacuerdo, el señor Verrengia presentó una *Moción Urgente de Reconsideración*. En esta se opuso al plan de ampliación de relaciones paternofiliales pues a su juicio, no ampliaba sino reducía el tiempo de compartir con su hija. Según indicó, bajo el plan anterior, podía compartir con la menor todos los miércoles y sábado de 9:00AM a 5:00PM, por lo que el espacio sin ver a su hija se reducía a 3 días hasta el próximo día. Sin embargo, bajo el nuevo plan de relaciones paternofiliales en fines de semana alternos, tendría que esperar 11 días para poder estar con su hija. En vista de ello solicitó que en los fines de semanas que la menor no estaría con él, se mantengan las relaciones anteriores de recoger a la menor los miércoles y sábados de 9:00AM a 5:00pm.

La señora Sterlin se opuso a la reconsideración por cuanto la determinación emitida estuvo basada en las recomendaciones de la Trabajadora Social. También argumentó que lo solicitado por el peticionario interferiría con la orden de matricular a la menor en una escuela, pues las horas en la semana que propone relacionarse con la menor es horario escolar y conlleva además una coordinación entre ellos a pesar de que no se hablan. El 10 de agosto el TPI emitió la segunda *Resolución* recurrida declarando sin lugar la solicitud de reconsideración e indicando que esperará hasta el informe final.

En desacuerdo con ambas determinaciones el señor Verrengia solicitó la expedición del auto de *Certiorari* que nos ocupa pues según alegó el tribunal *a quo* incidió en lo siguiente:

> Erró el Honorable TPI al determinar que esperará al Informe Social para resolver el asunto sobre la custodia compartida, cuando no hay razón en derecho que impida reestablecer el derecho que le asiste.

II

A.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 51 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> [e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o **en casos de relaciones de familia**, en casos que revistan interés público

o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro). 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

B

Es indiscutible que la relación entre padres e hijos está protegida bajo el palio del derecho fundamental a la intimidad consagrado en las secciones 1 y 8 del Art. II de la Constitución de Puerto Rico. *Rexach v. Ramírez*, 162 DPR 130, 143 (2004). En la esfera federal, los derechos de

los padres son examinados principalmente a la luz de la Enmienda Decimocuarta de la Constitución de Estados Unidos la cual garantiza que ninguna persona sea privada de su vida, libertad o propiedad sin un debido proceso de ley. *Íd.*, pág. 145. La relación entre padres e hijos incluye el derecho a la patria potestad, a la custodia y a sostener relaciones materno o paterno filiales. Sin embargo, como ningún derecho fundamental es absoluto, los derechos de los padres también pueden limitarse en aras de proteger un interés apremiante del Estado, como lo es el bienestar de los menores. *Íd.*, pág. 148. Lo anterior quiere decir que aun cuando el derecho de un progenitor a tener consigo a sus hijos es uno de superior jerarquía, el mismo tiene que ceder ante la facultad de *parens patriae* del Estado de salvaguardar y proteger el bienestar del menor. *Rivera v. Morales*, 167 DPR 280, 290 (2006).

Esa facultad de *parens patriae* ha sido delegada por el Estado a los tribunales por lo que en un proceso de adjudicación de custodia debemos guiarnos por un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante nuestra consideración, teniendo como único y principal objetivo el bienestar de los menores. *Rivera v. Morales*, 167 DPR 280, 293 (2006); *Pena v. Pena*, 152 DPR 820, 832-833 (2000). Es decir, todo conflicto entre los intereses de otros y el mejor interés del menor debe resolverse a favor del menor. *Ortiz v. Meléndez*, 164 DPR 16, 28 (2005); *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016).

Como regla general, el tribunal aceptará los convenios y las estipulaciones a las que lleguen las partes para finalizar un pleito de divorcio por consentimiento mutuo que se ventile judicialmente. Dicho acuerdo tendrá el efecto de cosa juzgada entre las partes. *Díaz Rodríguez v. Garcia Neris*, 208 DPR 706 (2022). Sin embargo, a diferencia de otras estipulaciones a las que lleguen las partes en un divorcio por consentimiento mutuo, los acuerdos de alimentos no constituyen cosa juzgada y están sujetos a revisión. *Íd.* La pensión alimentaria acordada puede ser alterada cuando existe un cambio sustancial en las

circunstancias que originaron el convenio. *Ex parte Negrón Rivera y Bonilla*, 120 DPR 61 (1987). En esta misma línea el Tribunal Supremo ha reiterado que las determinaciones de alimentos y de custodia de menores no constituyen cosa juzgada ya que están sujetas a revisión judicial si ocurre un cambio en circunstancias que así lo justifique. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 85-86 (2018). Por lo tanto, dichos dictámenes nunca son estrictamente finales ni definitivos. *Íd.*

La determinación sobre custodia de un menor tiene como norte, exclusivamente, garantizar y proteger el mejor interés y bienestar de ese menor. *Peña v. Peña*, 164 DPR 949, 959 (2005). Tanto los Arts. 7-9 de la Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, Ley Núm. 23-2011, 32 LPRA sec. 3185-3187, así como los Arts. 604-605 del Código Civil, 31 LPRA sec. 7283-7284, disponen los criterios que el foro de instancia habrá de considerar en la adjudicación de custodia.

En este delicado quehacer, el foro judicial debe contar con la información más completa y actualizada posible tales como las investigaciones de índole social que entienda procedentes. *Jusino González v. Norat Santiago*, 2023 TSPR 47, 211 DPR_____. Los informes preparados por la Unidad Social de Relaciones de Familia y Asuntos de Menores del Tribunal tienen como función principal ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que le permitan tomar decisiones informadas en los casos ante su consideración. *Íd.; Muñoz Sánchez v. Báez De Jesús*, 195 DPR 645, 651 (2016). Una vez el trabajador social de la Unidad de Relaciones de Familia emita el informe social correspondiente las partes tendrán derecho a examinar e impugnar estos informes de una forma efectiva cuando le son adversos. *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416, 429, 432-433 (2018); *Colón v. Meléndez*, 87 DPR 442 (1963). Asimismo, el Tribunal debe concederles la oportunidad de formular objeciones sobre este o presentar prueba en contrario, incluyendo sus propios peritos. *Íd.*

En atención a lo antes expuesto, el incuestionable que en nuestro ordenamiento el proceso de limitar la custodia a cualquiera de los progenitores, por el mejor bienestar del menor, conlleva claras consideraciones de debido proceso de ley. *Rentas Nieves v. Betancourt Figueroa*, *supra*, pág. 428.

III

El señor Verrengia nos solicita que expidamos el auto de *Certiorari* y revoquemos dos determinaciones del TPI relacionadas con un delicado asunto de familia como lo es la custodia de un menor. Esta es una de las circunstancias que la Regla 52.1 de Procedimiento Civil, *supra,* nos faculta a intervenir de manera interlocutoria. Por consiguiente, luego de analizar el recurso a la luz de los criterios de la Regla 40 de nuestro reglamento, *supra,* hemos decidido expedir el auto solicitado por entender que los planteamientos esbozados por el peticionario exigen una consideración mas detenida.

En esencia, el peticionario alega en su recurso que el TPI venía obligado a restablecer la custodia compartida acordada por ambos en la estipulación de divorcio tras ser absuelto de los cargos criminales por violencia doméstica y luego de haberse denegado la orden de protección en su contra. Abundó que dicho foro no tenía que esperar al Informe Social ni celebrar vista evidenciaria, toda vez que la suspensión de la custodia compartida de la cual ambos gozaban estuvo cimentada en unos hechos que nunca se probaron. Aunque entendemos el deseo del peticionario de ostentar nuevamente la custodia compartida de su hija, no podemos avalar su petitorio en esta etapa del proceso. Veamos.

En principio, el tribunal *a quo* no venía obligado a restablecer la custodia compartida en esta etapa del proceso judicial y prescindiendo del trámite que nuestro ordenamiento requiere para ello. Resulta claro que las estipulaciones sobre custodia de menores adoptadas por una pareja como parte de su divorcio por consentimiento mutuo ante notario, no constituyen

<u>cosa juzgada por lo que están sujetas a revisión judicial y pueden ser variadas judicialmente ante un cambio en las circunstancias</u>.

En este caso el señor Verrengia y la señora Sterlin acordaron mantener custodia compartida de la menor en las estipulaciones del divorcio por consentimiento mutuo. La pareja mantuvo dicho acuerdo hasta el 15 de marzo de 2022 cuando en virtud de una orden de protección ex parte se adjudicó provisionalmente la custodia de la menor a la señora Sterlin. Desde entonces residen por separado y la comunicación entre la pareja se ha deteriorado. La señora Sterlin presentó una demanda de custodia monoparental y alimentos contra el peticionario y este último presentó una reconvención solicitando custodia compartida. En atención a lo anterior, la sala de relaciones de familia que atiende el caso tiene autoridad para revisar la procedencia de la custodia compartida, tanto de manera provisional, como de manera permanente.

De otro lado, el caso de epígrafe es independiente del proceso criminal y de la solicitud de orden de protección instada contra el peticionario. En el caso de autos el foro primario tiene que determinar la custodia de la menor, provisional y permanente, evaluando los criterios que nuestro ordenamiento requiere y utilizando como criterio rector el bienestar y los mejores intereses de la menor. En dicho trámite, tiene la potestad de ordenar las investigaciones de índole social que entienda procedentes y que le ayuden a determinar la mejor manera de proteger el bienestar de la menor.

Del expediente electrónico del caso surge que aún antes de que el peticionario compareciera al pleito el tribunal denegó una solicitud de traslado de la madre de la menor porque no contaba con su autorización. Luego, en atención a las peticiones del señor Verrengia el tribunal ordenó a la trabajadora social incluir un análisis de enajenación parental en su informe y ordenó relaciones paternofiliales supervisadas en el Programa Hope. Posteriormente, también en atención a la solicitud del peticionario,

ordenó relaciones paternofiliales a través del Proyecto Encuentro todos los miércoles y sábados de 9:00AM – 5:00PM.

Incluso, ante la solicitud del peticionario para que se restableciera la custodia compartida como remedio provisional, el TPI requirió a la trabajadora social que realizara una evaluación al respecto y emitiera su recomendación. Según ordenado, la trabajadora social discutió el asunto con dos trabajadoras sociales que habían intervenido de algún modo en el caso, entrevistó a ambos padres y a la menor de forma presencial e individual en su oficina. Tras el estudio realizado no recomendó restablecer la custodia compartida de manera provisional, en cambio recomendó ampliar las relaciones paternofiliales a fines de semanas alternos y comunicaciones virtuales con el padre todos los domingos y martes durante una hora. En su informe la profesional advirtió que debido a que los padres no tenían ninguna comunicación entre sí debían identificar un intermediario o contratar un coordinador de coparentalidad para ayudarlos a coordinar los asuntos relacionados a la menor.

Por consiguiente, el foro de instancia no abusó de su discreción al negarse a restablecer la custodia compartida en esta etapa del pleito. Por el contrario, de conformidad con nuestro ordenamiento realizó un análisis objetivo y cuidadoso de las circunstancias presentes de las partes valiéndose para ello del asesoramiento de la trabajadora social de la Unidad de Relaciones de Familia. Considerando que queda pendiente por adjudicar la custodia y la solicitud de relocalización de la recurrida, el Informe Social de la Trabajadora Social no se ha tornado académico pues es uno de los factores que el foro judicial habrá de considerar para hacer la determinación correspondiente.

Este caso requiere que el tribunal realice un balance entre el ejercicio de su función de *parens patriae* para velar por el mejor bienestar de la menor, y el derecho constitucional de los padres a ostentar la custodia de sus hijos menores. Por tanto**, resulta de crucial importancia que el TPI agilice el trámite del caso y atienda las comparecencias de las**

**partes oportunamente**.[8] A tales efectos, **ordenamos al TPI a requerir la culminación del informe social en un término no mayor de 20 días.** A su vez, **ordenamos que se establezca con anticipación un plan de relaciones paternofiliales para el periodo de acción de gracias, el periodo de navidad y para el receso académico de primavera.**

IV

Por los fundamentos antes expuestos *expedimos* el auto solicitado, ordenamos al TPI a culminar el informe el informe social en un término no mayor de 20 días. A su vez, ordenamos que se establezca con anticipación un plan de relaciones paternofiliales para el periodo de acción de gracias, el periodo de navidad y para el receso académico de primavera. Así modificadas, *confirmamos* las determinaciones recurridas.

Proceda el TPI con lo aquí ordenado, sin necesidad de esperar el mandato.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Candelaria Rosa está conforme y añade la siguiente expresión:

"Estoy conforme con la determinación a la que se arriba en la Sentencia que hoy se notifica, puesto que, si bien en ausencia de determinación adversa en los procesos penal y de ley 54 instaurados contra el peticionario lo ordinario y deseable desde el punto de vista de un menor necesitado de ambos padres hubiese sido la restitución de la custodia compartida originalmente pactada, el devenir en las relaciones entre los padres y las circunstancias fácticas que rodean el caso impide denominar la actuación del foro recurrido como un abuso de discreción, sino más bien como un ejercicio razonable -aunque accidentado por retrasos- del manejo

---

[8] Adviértase que el Informe Social se ordenó el 24 de mayo de 2022 y desde entonces, el tribunal ha concedido cuatro prórrogas para su culminación. Si bien el 7 de junio de 2023 se autorizó el informe interestatal para evaluar la solicitud de relocalización aún no se ha culminado el mismo.

de su caso, lo cual, según mi perspectiva, resulta remediado por la aceleración procesal que la presente Sentencia impone."

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones